**GLANCY PRONGAY & MURRAY LLP**
Lionel Z. Glancy (#134180)
Robert V. Prongay (#270796)
Joshua L. Crowell (#295411)
Charles H. Linehan (#307439)
1925 Century Park East, Suite 2100
Los Angeles, CA 90067
Telephone: (310) 201-9150
Facsimile: (310) 201-9160
Email: info@glancylaw.com

*Attorneys for Plaintiff*

[Additional Counsel Listed On Signature Page]

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOSEPH GIUGNO, Individually and On Behalf of All Others Similarly Situated, <br><br> Plaintiff, <br><br> v. <br><br> BRISTOL-MYERS SQUIBB COMPANY, MICHAEL GIORDANO, FOUAD NAMOUNI, FRANCIS M. CUSS, GIOVANNI CAFORIO, LAMBERTO ANDREOTTI, and CHARLES A. BANCROFT, <br><br> Defendants. | Case No.: <br><br> **CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS** <br><br> **JURY TRIAL DEMANDED** |

CLASS ACTION COMPLAINT

Plaintiff Joseph Giugno ("Plaintiff"), by and through his attorneys, alleges the following upon information and belief, except as to those allegations concerning Plaintiff, which are alleged upon personal knowledge. Plaintiff's information and belief is based upon, among other things, his counsel's investigation, which includes without limitation: (a) review and analysis of regulatory filings made by Bristol-Myers Squibb Company ("Bristol-Myers" or the "Company") with the United States ("U.S.") Securities and Exchange Commission ("SEC"); (b) review and analysis of press releases and media reports issued by and disseminated by Bristol-Myers; and (c) review of other publicly available information concerning Bristol-Myers.

## NATURE OF THE ACTION AND OVERVIEW

1. This is a class action on behalf of persons and entities that acquired Bristol-Myers securities between January 27, 2015 and October 9, 2016, inclusive (the "Class Period"), against the Defendants,[1] seeking to pursue remedies under the Securities Exchange Act of 1934 (the "Exchange Act").

2. Bristol-Myers purportedly discovers, develops, licenses, manufactures, markets, distributes, and sells biopharmaceutical products globally.  In January of 2015, the Company's CheckMate-026 study investigating the use of Opdivo (nivolumab) monotherapy as first-line therapy in patients with advanced non-small cell lung cancer ("NSCLC") was underway.

3. On August 5, 2016, the Company announced that its CheckMate-026 trial investigating the use of Opdivo (nivolumab) as monotherapy had failed because it did not meet its primary endpoint of progression-free survival.

4. On this news, the Company's stock price fell $12.04 per share, or 16%, to close at $63.28 per share on August 5, 2016, on unusually heavy trading volume.  The stock price continued to fall on the next trading day, declining another $2.98 per share, or 4.7%, on unusually heavy trading volume, to close at $60.30 per share on August 8, 2016.

5. On October 9, 2016, Bristol-Myers disclosed the final primary analysis of CheckMate-026, including the finding that overall survival was only 14.4 months

---

[1] The "Defendants" are Bristol-Myers, Michael Giordano, Fouad Namouni, Francis M. Cuss, Giovanni Caforio, Lamberto Andreotti, and Charles A. Bancroft.

CLASS ACTION COMPLAINT
1

for Opdivo versus 13.2 months for chemotherapy.

6. On this news, the Company's stock price fell $5.62 per share, or 10.1%, to close at $49.81 per share on October 10, 2016, on unusually heavy trading volume.

7. Throughout the Class Period, Defendants made materially false and/or misleading statements, as well as failed to disclose material adverse facts about the Company's business, operations, and prospects. Specifically, Defendants failed to disclose: (1) that Bristol-Myers' CheckMate-026 trial was more likely to fail than Defendants were representing; (2) that Bristol-Myers' CheckMate-026 trial failed more severely than the Company indicated it did in the Company's August 5, 2016 announcements and disclosures; and (3) that, as a result of the foregoing, Defendants' statements about Bristol-Myers' business, operations, and prospects, were materially false and/or misleading and/or lacked a reasonable basis.

8. As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiff and other Class members have suffered significant losses and damages.

**JURISDICTION AND VENUE**

9. The claims asserted herein arise under Sections 10(b) and 20(a) of the Exchange Act (15 U.S.C. §§ 78j(b) and 78t(a)) and Rule 10b-5 promulgated thereunder by the SEC (17 C.F.R. § 240.10b-5).

10. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331 and Section 27 of the Exchange Act (15 U.S.C. § 78aa).

11. Venue is proper in this Judicial District pursuant to 28 U.S.C. § 1391(b) and Section 27 of the Exchange Act (15 U.S.C. § 78aa(c)). Substantial acts in furtherance of the alleged fraud or the effects of the fraud have occurred in this Judicial District. Many of the acts charged herein, including the dissemination of materially false and/or misleading information, occurred in substantial part in this Judicial District. In addition, the Company maintains a 132,000 square foot research facility in this Judicial District.

12. In connection with the acts, transactions, and conduct alleged herein, Defendants directly and indirectly used the means and instrumentalities of interstate commerce, including the

1 United States mail, interstate telephone communications, and the facilities of a national securities
2 exchange.

## PARTIES

13. Plaintiff Joseph Giugno, as set forth in the accompanying certification, incorporated by reference herein, purchased Bristol-Myers securities during the Class Period, and suffered damages as a result of the federal securities law violations and false and/or misleading statements and/or material omissions alleged herein.

14. Defendant Bristol-Myers Squibb Company is incorporated in Delaware and its principal executive offices are in New York, New York.  Bristol-Myers' common stock trades on the New York Stock Exchange ("NYSE") under the symbol "BMY."

15. Defendant Michael Giordano ("Giordano") was the Senior Vice President and Head of Development for Oncology at Bristol-Myers at all relevant times until July 2016.

16. Defendant Fouad Namouni ("Namouni") was the Head of Oncology Development at Bristol-Myers from July 25, 2016 through the end of the Class Period.

17. Defendant Francis M. Cuss ("Cuss") was the Chief Scientific Officer and Executive Vice President of Bristol-Myers at all relevant times.

18. Defendant Giovanni Caforio ("Caforio") was the Chief Operating Officer ("COO") of Bristol-Myers from June 5, 2014 until May 5, 2015.  Caforio was also the Chief Executive Officer ("CEO") of Bristol-Myers from May 5, 2015 through the end of the Class Period.

19. Defendant Lamberto Andreotti ("Andreotti") was the CEO of Bristol-Myers from May 2010, until May 5, 2015.

20. Defendant Charles A. Bancroft ("Bancroft") was the Chief Financial Officer ("CFO") of Bristol-Myers at all relevant times.

21. Defendants Giordano, Namouni, Cuss, Caforio, Andreotti, and Bancroft (collectively the "Individual Defendants"), because of their positions with the Company, possessed the power and authority to control the contents of Bristol-Myers' reports to the SEC, press releases and presentations to securities analysts, money and portfolio managers and institutional investors, *i.e.*, the market.  The Individual Defendants were provided with copies of

1  the Company's reports and press releases alleged herein to be misleading prior to, or shortly after,
2  their issuance and had the ability and opportunity to prevent their issuance or cause them to be
3  corrected.  Because of their positions and access to material non-public information available to
4  them, the Individual Defendants knew that the adverse facts specified herein had not been
5  disclosed to, and were being concealed from, the public, and that the positive representations
6  which were being made were then materially false and/or misleading.  The Individual Defendants
7  are liable for the false statements pleaded herein.

## SUBSTANTIVE ALLEGATIONS

### Background

22.  Bristol-Myers purportedly discovers, develops, licenses, manufactures, markets, distributes, and sells biopharmaceutical products globally.  In January of 2015, the Company's CheckMate-026 study investigating the use of Opdivo (nivolumab) monotherapy as first-line therapy in patients with advanced NSCLC was underway.

### Materially False and Misleading Statements Issued During the Class Period

23.  The Class Period begins on January 27, 2015.  On that day, Defendant Cuss participated in an investor call to discuss the Company's earnings for the fourth quarter 2014.  On the call, Defendant Cuss, in relevant part, stated: "We also have a first-line study underway [referring to CheckMate-026] and it's our intent to beat chemotherapy, double it in first line as we have already done in melanoma and in second-line squamous."

24.  On September 8, 2015, Defendant Giordano participated in an investor call at the 16th Annual World Conference on Lung Cancer.  On the call, Defendant Giordano, in relevant part, stated: "As a reminder, the 026 study design for which we have great confidence . . . has been designed appropriately to read out significantly in the next several months."

25.  On October 1, 2015, Defendant Giordano participated in an investor call at the Leerink Partners Rare Disease Roundtable Conference.  On the call, Defendant Giordano, in relevant part, stated:

> The CheckMate -026 study . . . was fully enrolled and will mature next year . . . .
> The data from CheckMate-012 and others, which looks at PFS, suggests that we're

CLASS ACTION COMPLAINT
4

> very confident that that study will be a positive study, in particular, the characterization of the survival.

26. On January 28, 2016, Defendant Cuss participated in an investor conference call to discuss the Company's Q4 2015 financial results. On the call, Defendant Cuss, in relevant part, stated:

> As far as 026 is concerned, we've actually taken great care in the design of this study. . . . And we've used a wealth of data, both published and our internal data on Opdivo, to help guide us. So we believe we really have got the optimum balance of speed and the design to deliver positive results in the widest population of first line lung patients, as we've done in other studies of Opdivo recently.

27. On March 7, 2016, Defendant Namouni participated in the Cowen and Company Global Health Care Conference, which included a question and answer portion. During the Q&A, Defendant Namouni, in relevant part, stated:

> This study [CheckMate -026] was well-designed and this study represents all the knowledge in terms of designs that was really made at Bristol-Myers Squibb from our understanding from a number of positive Phase 3s looking at different end points; and this help us to design these type of studies. . . . [T]his study is well-powered and well-designed to detect a PFS difference at the right time in this population of patients.

28. On April 28, 2016, Defendants Cuss and Caforio participated in an investor conference call to discuss the Company's Q1 2016 financial results. On the call, Defendant Cuss, in relevant part, stated:

> Now regarding CheckMate -026, we said that both the events and the timing of the follow-up were important considerations for the timing of the analysis. And I want to say that based on what we now know about the progress of the trial and the current event rate, we believe we could have the results from CheckMate -026 in the third quarter, which as you appreciate is earlier than we had previously estimated. Now I just want to emphasize, there are always risks inherent in clinical trials. But this change in timing of having the data does not increase it for the CheckMate -026 study.
>
> . . .
>
> So let me emphasize. We've really taken great care in the design of Study -026 . . . .

On the same call, Defendant Caforio, in relevant part, stated:

> on Study -026 it's obviously not appropriate to speculate on other trials. Let me just reiterate. We are very comfortable about the design of our trial. We are very comfortable about the depth of understanding that went into the statistical plans. And we are increasingly comfortable about the choices we've made in terms of the dosing and schedule of Opdivo, as it relates to the efficacy we are seeing, both in

CLASS ACTION COMPLAINT
5

the marketplace and in clinical trials. And I think it will be important to really look at the results of our study to understand the performance of Opdivo in the first-line setting in lung cancer.

29. On July 28, 2016, Defendant Cuss participated in an investor conference call to discuss the Company's Q2 2016 financial results. On the call, Defendant Cuss, in relevant part, stated:

> I'm confident in the study design of -026. And I look forward to seeing the data in weeks, not months.
>
> . . .
>
> I just know they [the development, regulatory, and filing teams] are relishing the opportunity to get their hands on the data for -026 and to maintain or even exceed the performance they've already done. So it's a very—they're a very excited team. And we're very confident in them to move this quickly forward.

30. The above statements identified in ¶¶23-29 were materially false and/or misleading, and failed to disclose material adverse facts about the Company's business, operations, and prospects. Specifically, Defendants failed to disclose: (1) that Bristol-Myers' CheckMate-026 trial was more likely to fail than Defendants were representing; and (2) that, as a result of the foregoing, Defendants' statements about Bristol-Myers' business, operations, and prospects, were materially false and/or misleading and/or lacked a reasonable basis.

**<u>Corrective Disclosures</u>**

31. On August 5, 2016, the Company announced that its CheckMate-026 trial investigating the use of Opdivo (nivolumab) as monotherapy had failed because it did not meet its primary endpoint of progression-free survival in patients with previously untreated advanced non-small cell lung cancer (NSCLC).

32. On the same day, August 5, 2016, the Company issued a press release entitled "Bristol-Myers Squibb Statement on Top-Line Results from CheckMate-026." Therein, the Company, in relevant part, stated:

> While the news regarding CheckMate -026 is disappointing, Bristol-Myers Squibb is proud of all that the company has and aims to accomplish with *Opdivo*. We are indeed transforming cancer care, and remain committed to bringing the benefit of our medicines to the greatest number of patients across multiple cancers.
>
> We designed our development program in lung cancer to address the unmet need of *every* lung cancer patient and our scientific approach is a bold one. Our first-line

strategy consists of two trials – one that is studying *Opdivo* alone and one studying *Opdivo* in combination with *Yervoy*.

33. On this news, the Company's stock price fell $12.04 per share, or 16%, to close at $63.28 per share on August 5, 2016, on unusually heavy trading volume. The stock price continued to fall on the next trading day, declining another $2.98 per share, or 4.7%, on unusually heavy trading volume, to close at $60.30 per share on August 8, 2016.

34. Even after the announcement on August 5, 2016, Defendants continued to mislead the market before they released the complete results of the trial. They claimed that once all the data was released, it would show the efficacy of Opdivo.

35. Bristol-Myers presented its analysis of the full data set from CheckMate-026 at the European Society of Medical Oncology on October 9, 2016. On an investor call during the conference, Defendants explained to investors that CheckMate-026 had failed to demonstrate the efficacy of Opdivo versus chemotherapy in subgroups of the lung cancer patient population.

36. Analysts understood that design flaws likely caused CheckMate-026 to fail. For example, and analyst at William Blair explained that "meaningful imbalances in the enrollment across treatment arms, including patents with liver metastasis and male/female ratios may have contributed to the trial failure."

37. On this news, the Company's stock price fell $5.62 per share, or 10.1%, to close at $49.81 per share on October 10, 2016, on unusually heavy trading volume.

## CLASS ACTION ALLEGATIONS

38. Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a class, consisting of all persons and entities that acquired Bristol-Myers securities between January 27, 2015 and October 9, 2016, inclusive, and who were damaged thereby (the "Class"). Excluded from the Class are Defendants, the officers and directors of the Company, at all relevant times, members of their immediate families and their legal representatives, heirs, successors, or assigns, and any entity in which Defendants have or had a controlling interest.

39. The members of the Class are so numerous that joinder of all members is

1 impracticable. Throughout the Class Period, Bristol-Myers' common stock actively traded on the
2 NYSE. While the exact number of Class members is unknown to Plaintiff at this time and can
3 only be ascertained through appropriate discovery, Plaintiff believes that there are at least
4 hundreds or thousands of members in the proposed Class. Millions of Bristol-Myers shares were
5 traded publicly during the Class Period on the NYSE. As of September 30, 2016, Bristol-Myers
6 had 1,671,229,946 shares of common stock outstanding. Record owners and other members of the
7 Class may be identified from records maintained by Bristol-Myers or its transfer agent and may be
8 notified of the pendency of this action by mail, using the form of notice similar to that customarily
9 used in securities class actions.

10 40. Plaintiff's claims are typical of the claims of the members of the Class as all
11 members of the Class are similarly affected by Defendants' wrongful conduct in violation of
12 federal law that is complained of herein.

13 41. Plaintiff will fairly and adequately protect the interests of the members of the Class
14 and has retained counsel competent and experienced in class and securities litigation.

15 42. Common questions of law and fact exist as to all members of the Class and
16 predominate over any questions solely affecting individual members of the Class. Among the
17 questions of law and fact common to the Class are:

18 (a) whether the federal securities laws were violated by Defendants' acts as alleged
19 herein;

20 (b) whether statements made by Defendants to the investing public during the Class
21 Period omitted and/or misrepresented material facts about the business, operations, and prospects
22 of Bristol-Myers; and

23 (c) to what extent the members of the Class have sustained damages and the proper
24 measure of damages.

25 43. A class action is superior to all other available methods for the fair and efficient
26 adjudication of this controversy since joinder of all members is impracticable. Furthermore, as the
27 damages suffered by individual Class members may be relatively small, the expense and burden of
28 individual litigation makes it impossible for members of the Class to individually redress the

wrongs done to them. There will be no difficulty in the management of this action as a class action.

**UNDISCLOSED ADVERSE FACTS**

44. The market for Bristol-Myers' securities was open, well-developed and efficient at all relevant times. As a result of these materially false and/or misleading statements, and/or failures to disclose, Bristol-Myers' securities traded at artificially inflated prices during the Class Period. Plaintiff and other members of the Class purchased or otherwise acquired Bristol-Myers' securities relying upon the integrity of the market price of the Company's securities and market information relating to Bristol-Myers, and have been damaged thereby.

45. During the Class Period, Defendants materially misled the investing public, thereby inflating the price of Bristol-Myers' securities, by publicly issuing false and/or misleading statements and/or omitting to disclose material facts necessary to make Defendants' statements, as set forth herein, not false and/or misleading. The statements and omissions were materially false and/or misleading because they failed to disclose material adverse information and/or misrepresented the truth about Bristol-Myers' business, operations, and prospects as alleged herein.

46. At all relevant times, the material misrepresentations and omissions particularized in this Complaint directly or proximately caused or were a substantial contributing cause of the damages sustained by Plaintiff and other members of the Class. As described herein, during the Class Period, Defendants made or caused to be made a series of materially false and/or misleading statements about Bristol-Myers' financial well-being and prospects. These material misstatements and/or omissions had the cause and effect of creating in the market an unrealistically positive assessment of the Company and its financial well-being and prospects, thus causing the Company's securities to be overvalued and artificially inflated at all relevant times. Defendants' materially false and/or misleading statements during the Class Period resulted in Plaintiff and other members of the Class purchasing the Company's securities at artificially inflated prices, thus causing the damages complained of herein when the truth was revealed.

## LOSS CAUSATION

47. Defendants' wrongful conduct, as alleged herein, directly and proximately caused the economic loss suffered by Plaintiff and the Class.

48. During the Class Period, Plaintiff and the Class purchased Bristol-Myers' securities at artificially inflated prices and were damaged thereby. The price of the Company's securities significantly declined when the misrepresentations made to the market, and/or the information alleged herein to have been concealed from the market, and/or the effects thereof, were revealed, causing investors' losses.

## SCIENTER ALLEGATIONS

49. As alleged herein, Defendants acted with scienter since Defendants knew that the public documents and statements issued or disseminated in the name of the Company were materially false and/or misleading; knew that such statements or documents would be issued or disseminated to the investing public; and knowingly and substantially participated or acquiesced in the issuance or dissemination of such statements or documents as primary violations of the federal securities laws. As set forth elsewhere herein in detail, the Individual Defendants, by virtue of their receipt of information reflecting the true facts regarding Bristol-Myers, their control over, and/or receipt and/or modification of Bristol-Myers' allegedly materially misleading misstatements and/or their associations with the Company which made them privy to confidential proprietary information concerning Bristol-Myers, participated in the fraudulent scheme alleged herein.

## APPLICABILITY OF PRESUMPTION OF RELIANCE
## (FRAUD-ON-THE-MARKET DOCTRINE)

50. The market for Bristol-Myers' securities was open, well-developed and efficient at all relevant times. As a result of the materially false and/or misleading statements and/or failures to disclose, Bristol-Myers' securities traded at artificially inflated prices during the Class Period. On July 14, 2016, the Company's stock price closed at a Class Period high of $76.77 per share. Plaintiff and other members of the Class purchased or otherwise acquired the Company's securities relying upon the integrity of the market price of Bristol-Myers' securities and market

information relating to Bristol-Myers, and have been damaged thereby.

51. During the Class Period, the artificial inflation of Bristol-Myers' stock was caused by the material misrepresentations and/or omissions particularized in this Complaint causing the damages sustained by Plaintiff and other members of the Class. As described herein, during the Class Period, Defendants made or caused to be made a series of materially false and/or misleading statements about Bristol-Myers' business, prospects, and operations. These material misstatements and/or omissions created an unrealistically positive assessment of Bristol-Myers and its business, operations, and prospects, thus causing the price of the Company's securities to be artificially inflated at all relevant times, and when disclosed, negatively affected the value of the Company stock. Defendants' materially false and/or misleading statements during the Class Period resulted in Plaintiff and other members of the Class purchasing the Company's securities at such artificially inflated prices, and each of them has been damaged as a result.

52. At all relevant times, the market for Bristol-Myers' securities was an efficient market for the following reasons, among others:

(a) Bristol-Myers stock met the requirements for listing, and was listed and actively traded on the NYSE, a highly efficient and automated market;

(b) As a regulated issuer, Bristol-Myers filed periodic public reports with the SEC and/or the NYSE;

(c) Bristol-Myers regularly communicated with public investors via established market communication mechanisms, including through regular dissemination of press releases on the national circuits of major newswire services and through other wide-ranging public disclosures, such as communications with the financial press and other similar reporting services; and/or

(d) Bristol-Myers was followed by securities analysts employed by brokerage firms who wrote reports about the Company, and these reports were distributed to the sales force and certain customers of their respective brokerage firms. Each of these reports was publicly available and entered the public marketplace.

53. As a result of the foregoing, the market for Bristol-Myers' securities promptly digested current information regarding Bristol-Myers from all publicly available sources and

reflected such information in Bristol-Myers' stock price. Under these circumstances, all purchasers of Bristol-Myers' securities during the Class Period suffered similar injury through their purchase of Bristol-Myers' securities at artificially inflated prices and a presumption of reliance applies.

54. A Class-wide presumption of reliance is also appropriate in this action under the Supreme Court's holding in *Affiliated Ute Citizens of Utah v. United States*, 406 U.S. 128 (1972), because the Class's claims are, in large part, grounded on Defendants' material misstatements and/or omissions. Because this action involves Defendants' failure to disclose material adverse information regarding the Company's business operations and financial prospects—information that Defendants were obligated to disclose—positive proof of reliance is not a prerequisite to recovery. All that is necessary is that the facts withheld be material in the sense that a reasonable investor might have considered them important in making investment decisions. Given the importance of the Class Period material misstatements and omissions set forth above, that requirement is satisfied here.

## **NO SAFE HARBOR**

55. The statutory safe harbor provided for forward-looking statements under certain circumstances does not apply to any of the allegedly false statements pleaded in this Complaint. The statements alleged to be false and misleading herein all relate to then-existing facts and conditions. In addition, to the extent certain of the statements alleged to be false may be characterized as forward looking, they were not identified as "forward-looking statements" when made and there were no meaningful cautionary statements identifying important factors that could cause actual results to differ materially from those in the purportedly forward-looking statements. In the alternative, to the extent that the statutory safe harbor is determined to apply to any forward-looking statements pleaded herein, Defendants are liable for those false forward-looking statements because at the time each of those forward-looking statements was made, the speaker had actual knowledge that the forward-looking statement was materially false or misleading, and/or the forward-looking statement was authorized or approved by an executive officer of Bristol-Myers who knew that the statement was false when made.

**FIRST CLAIM**
**Violation of Section 10(b) of The Exchange Act and**
**Rule 10b-5 Promulgated Thereunder**
**Against All Defendants**

56. Plaintiff repeats and re-alleges each and every allegation contained above as if fully set forth herein.

57. During the Class Period, Defendants carried out a plan, scheme and course of conduct which was intended to and, throughout the Class Period, did: (i) deceive the investing public, including Plaintiff and other Class members, as alleged herein; and (ii) cause Plaintiff and other members of the Class to purchase Bristol-Myers' securities at artificially inflated prices. In furtherance of this unlawful scheme, plan and course of conduct, Defendants, and each defendant, took the actions set forth herein.

58. Defendants (i) employed devices, schemes, and artifices to defraud; (ii) made untrue statements of material fact and/or omitted to state material facts necessary to make the statements not misleading; and (iii) engaged in acts, practices, and a course of business which operated as a fraud and deceit upon the purchasers of the Company's securities in an effort to maintain artificially high market prices for Bristol-Myers' securities in violation of Section 10(b) of the Exchange Act and Rule 10b-5. All Defendants are sued either as primary participants in the wrongful and illegal conduct charged herein or as controlling persons as alleged below.

59. Defendants, individually and in concert, directly and indirectly, by the use, means or instrumentalities of interstate commerce and/or of the mails, engaged and participated in a continuous course of conduct to conceal adverse material information about Bristol-Myers' financial well-being and prospects, as specified herein.

60. Defendants employed devices, schemes and artifices to defraud, while in possession of material adverse non-public information and engaged in acts, practices, and a course of conduct as alleged herein in an effort to assure investors of Bristol-Myers' value and performance and continued substantial growth, which included the making of, or the participation in the making of, untrue statements of material facts and/or omitting to state material facts necessary in order to make the statements made about Bristol-Myers and its business operations

and future prospects in light of the circumstances under which they were made, not misleading, as set forth more particularly herein, and engaged in transactions, practices and a course of business which operated as a fraud and deceit upon the purchasers of the Company's securities during the Class Period.

61. Each of the Individual Defendants' primary liability and controlling person liability arises from the following facts: (i) the Individual Defendants were high-level executives and/or directors at the Company during the Class Period and members of the Company's management team or had control thereof; (ii) each of these defendants, by virtue of their responsibilities and activities as a senior officer and/or director of the Company, was privy to and participated in the creation, development and reporting of the Company's internal budgets, plans, projections and/or reports; (iii) each of these defendants enjoyed significant personal contact and familiarity with the other defendants and was advised of, and had access to, other members of the Company's management team, internal reports and other data and information about the Company's finances, operations, and sales at all relevant times; and (iv) each of these defendants was aware of the Company's dissemination of information to the investing public which they knew and/or recklessly disregarded was materially false and misleading.

62. Defendants had actual knowledge of the misrepresentations and/or omissions of material facts set forth herein, or acted with reckless disregard for the truth in that they failed to ascertain and to disclose such facts, even though such facts were available to them. Such defendants' material misrepresentations and/or omissions were done knowingly or recklessly and for the purpose and effect of concealing Bristol-Myers' financial well-being and prospects from the investing public and supporting the artificially inflated price of its securities. As demonstrated by Defendants' overstatements and/or misstatements of the Company's business, operations, financial well-being, and prospects throughout the Class Period, Defendants, if they did not have actual knowledge of the misrepresentations and/or omissions alleged, were reckless in failing to obtain such knowledge by deliberately refraining from taking those steps necessary to discover whether those statements were false or misleading.

63. As a result of the dissemination of the materially false and/or misleading

information and/or failure to disclose material facts, as set forth above, the market price of Bristol-Myers' securities was artificially inflated during the Class Period.  In ignorance of the fact that market prices of the Company's securities were artificially inflated, and relying directly or indirectly on the false and misleading statements made by Defendants, or upon the integrity of the market in which the securities trades, and/or in the absence of material adverse information that was known to or recklessly disregarded by Defendants, but not disclosed in public statements by Defendants during the Class Period, Plaintiff and the other members of the Class acquired Bristol-Myers' securities during the Class Period at artificially high prices and were damaged thereby.

64. At the time of said misrepresentations and/or omissions, Plaintiff and other members of the Class were ignorant of their falsity, and believed them to be true.  Had Plaintiff and the other members of the Class and the marketplace known the truth regarding the problems that Bristol-Myers was experiencing, which were not disclosed by Defendants, Plaintiff and other members of the Class would not have purchased or otherwise acquired their Bristol-Myers securities, or, if they had acquired such securities during the Class Period, they would not have done so at the artificially inflated prices which they paid.

65. By virtue of the foregoing, Defendants violated Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.

66. As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and the other members of the Class suffered damages in connection with their respective purchases and sales of the Company's securities during the Class Period.

**SECOND CLAIM**
**Violation of Section 20(a) of The Exchange Act**
**Against the Individual Defendants**

67. Plaintiff repeats and re-alleges each and every allegation contained above as if fully set forth herein.

68. Individual Defendants acted as controlling persons of Bristol-Myers within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their high-level positions and their ownership and contractual rights, participation in, and/or awareness of the Company's operations and intimate knowledge of the false financial statements filed by the

Company with the SEC and disseminated to the investing public, Individual Defendants had the power to influence and control and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the various statements which Plaintiff contends are false and misleading. Individual Defendants were provided with or had unlimited access to copies of the Company's reports, press releases, public filings, and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

69.     In particular, Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company and, therefore, had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same.

70.     As set forth above, Bristol-Myers and Individual Defendants each violated Section 10(b) and Rule 10b-5 by their acts and omissions as alleged in this Complaint. By virtue of their position as controlling persons, Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and other members of the Class suffered damages in connection with their purchases of the Company's securities during the Class Period.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for relief and judgment, as follows:

(a)     Determining that this action is a proper class action under Rule 23 of the Federal Rules of Civil Procedure;

(b)     Awarding compensatory damages in favor of Plaintiff and the other Class members against all defendants, jointly and severally, for all damages sustained as a result of Defendants' wrongdoing, in an amount to be proven at trial, including interest thereon;

(c)     Awarding Plaintiff and the Class their reasonable costs and expenses incurred in this action, including counsel fees and expert fees; and

(d)     Such other and further relief as the Court may deem just and proper.

**JURY TRIAL DEMANDED**

Plaintiff hereby demands a trial by jury.

Dated: February 9, 2018                        **GLANCY PRONGAY & MURRAY LLP**

By: *s/ Robert V. Prongay*
Lionel Z. Glancy
Robert V. Prongay
Joshua L. Crowell
Charles H. Linehan
1925 Century Park East, Suite 2100
Los Angeles, CA 90067
Telephone: (310) 201-9150
Facsimile: (310) 201-9160
Email: rprongay@glancylaw.com

**LAW OFFICES OF HOWARD G. SMITH**
Howard G. Smith
3070 Bristol Pike, Suite 112
Bensalem, PA 19020
Telephone: (215) 638-4847
Facsimile: (215) 638-4867

*Counsel for Plaintiff*

## SWORN CERTIFICATION OF PLAINTIFF

## BRISTOL-MYERS SQUIBB COMPANY SECURITIES LITIGATION

I, Joseph Giugno individually, and/or in my capacity as trustee and/or principal for accounts listed on Schedule A, certify that:

1. I have reviewed the Complaint and authorize its filing and/or the filing of a Lead Plaintiff motion on my behalf.

2. I did not purchase the Bristol-Myers Squibb Company securities that are the subject of this action at the direction of plaintiff's counsel or in order to participate in any private action arising under this title.

3. I am willing to serve as a representative party on behalf of a class and will testify at deposition and trial, if necessary.

4. My transactions in Bristol-Myers Squibb Company securities during the Class Period set forth in the Complaint are as follows:

    (See attached transactions)

5. I have not sought to serve, nor served, as a representative party on behalf of a class under this title during the last three years, except for the following:

6. I will not accept any payment for serving as a representative party, except to receive my pro rata share of any recovery or as ordered or approved by the court, including the award to a representative plaintiff of reasonable costs and expenses (including lost wages) directly relating to the representation of the class.

I declare under penalty of perjury that the foregoing are true and correct statements.

2/9/2018                                                  DocuSigned by:
_____                          _____
       Date                                                          Joseph Giugno
                                                                E1A14AC60543437...

**Joseph Giugno's Transactions in**
**Bristol-Myers Squibb Company (BMY)**

| Settlement Date | Transaction Type | Quantity | Unit Price |
|---|---|---|---|
| 2/2/2015 | Bought | 12.860 | $62.51 |
| 5/1/2015 | Bought | 12.578 | $64.29 |
| 8/3/2015 | Bought | 12.593 | $64.58 |
| 11/2/2015 | Bought | 12.138 | $67.39 |
| 2/1/2016 | Bought | 13.574 | $62.23 |
| 5/2/2016 | Bought | 12.091 | $70.28 |
| 7/27/2016 | Bought | 11.245 | $75.98 |